# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **Anthony Underwood** | ) | **CASE NO:** |
| **Melvin Nevett** | ) | **JURY DEMAND** |
| **Alzelda Richardson** | ) | |
| **Paul Garret** | ) | |
| **Anna L. Hill** | ) | |
| **Shirley Cotton,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| vs. | ) | |
| **Kenneth E. Gulley, Mayor of Bessemer** | ) | |
| **The City of Bessemer Councilmembers:** | ) | |
| **David Vance** | ) | |
| **Chester Porter** | ) | |
| **Cynthia Donald** | ) | |
| **Donna Thigpen** | ) | |
| **Ron Marshall** | ) | |
| **Jesse Matthews** | ) | |
| **Cleophus King** | ) | |
| **Wanda Taylor, Bessemer City Clerk** | ) | |
| **Johnnie Mae Lassiter, Individual** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

**MOTION FOR PRELIMINARY INJUNCTION**

COMES NOW the undersigned counsel on behalf of Plaintiffs, and respectfully moves for this honorable court for a preliminary injunction enjoining the defendants from any and all participation in the administration of the upcoming August 2018 City of Bessemer municipal elections. Grounds for this Motion are set forth fully in Plaintiffs' accompanying Memorandum of law.

Respectfully submitted,

/s/Richard A. Rice

_____

Richard A. Rice,

Attorney for Plaintiffs

# MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

## INTRODUCTION

The city of Bessemer showed at best blatant disregard for, and at worst outright contempt for, numerous areas of Alabama's election laws including the 2014 election. The illegal conduct was not only aided and abetted by the city's elected officials (who, of course, were set to directly benefit from particular election outcomes), but many of them were participants. As such, the city's leadership (the vast majority of whom were re-elected in 2014) should be viewed as unfit to oversee another municipal election. Specific & definite illegalities include a consistent lack of privacy in voting booths, an absolute failure to properly train election officials, several troubling occurrences dealing with provisional ballots, several unfortunate absences on the part of the city clerk, and numerous significant electioneering offences on the part of the incumbent mayor and city council.

## STATEMENT OF FACTS

This is a case about rampant, continual election violations on behalf of incumbent elected officials in the city of Bessemer, Alabama. The elections process in the City of Bessemer has been replete with conflicts of interest, corrupt practices, and illegal schemes effectuated to keep each incumbent official in

elected office. At all times prior to and during each municipal election, numerous elections violations occurred.

During previous elections, various polling locations were not open and available to voters at the proscribed time of 7:00 a.m. Poll workers at those locations reported to several locations as early as 6:00 a.m. to being preparations, at which point none of the other necessary personnel were present until as late as 6:50 a.m. Only a minority of poll workers possessed knowledge and skill at executing their tasks, most were inadequately trained, or lacked any training at all.

As a result of the tardiness of the polling personnel, voters were not allowed into the polling locations until 7:30 a.m. Voters were not provided with the infrastructure to fill out their ballots with the required privacy. Voters and poll workers were able to view others' ballots. Numerous polling locations did not have designated space for voters to fill out their ballots with certain voters needing to use any empty space available, such as the wall, the stage in an auditorium, or simply standing and filling out the ballots in their hands.

City councilmembers, incumbent elected officials, and other political candidates (to include each Defendant elected official) came inside of the polling locations, approached and engaged voters, and campaigned to voters inside of the polling locations. City councilmembers and other incumbent elected officials requested that poll workers report any issues directly to them to handle. Incumbent

elected officials also directly provided lunch, and other benefits to poll workers. One such official informed poll workers that the mayor had instructed him to purchase lunch for them for the day. The official proceeded to do so. Other incumbent elected officials repeatedly visited polling locations every hour and a half. A political candidate even helped a voter fill out a ballot.

Absentee ballots were cast by voters at various polling locations, these ballots were not separated from the other ballots. Poll watchers observed clerks incorrectly placing certain ballots in a secrecy folder. At one point, the mayor of Bessemer came into a polling location with seven other individuals, shaking hands and campaigning, though he did not cast a ballot.

At one polling place, during active voting times, a machine with no technical issues was opened, the ballot box removed, and a different ballot box placed inside. At a certain polling location, a ballot machine was not made available until well after the first machine, however, the final count for the second machine outnumbered the first. That machine was also shut down almost 2 hours prior to the polls closing. A poll worker observed a large number of ballots being removed from that machine.

In certain locations, provisional ballots were placed into the ballot machines at the direction of the Chief Inspectors, instead of being separated into an envelope as required. When a poll watcher informed one inspector that this was incorrect, the

inspector called city hall who informed the inspector to write voter's names on the voter's roster and throw the affidavits away.

At almost every polling location, the ballot machines suffered several errors in reporting and thus would not run the reporting tapes. In several locations, polling clerks were instructed to tally the votes by hand in spite of each ballot being cast into a machine.

## ARGUMENT

A Plaintiff that seeks a preliminary injunction has the burden of persuading the court of four factors:

> "(1) that without the injunction the plaintiff would suffer immediate and irreparable injury; (2) that the plaintiff has no adequate remedy at law; (3) that the plaintiff has at least a reasonable chance of success on the ultimate merits of his case; and (4) that the hardship imposed on the defendant by the injunction would not unreasonably outweigh the benefit accruing to the plaintiff."

*Ormco Corp. v. Johns*, 869 So.2d 1109, (Ala. 2003) (quoting *Perley v. Tapscan, Inc.,* 646 So.2d 585, 587 (Ala. 1994).

The Alabama Supreme Court defines "irreparable injury" as one that not redressable in a court of law with an award of money damages. *Perley* at 587 (citing *Triple J Cattle, Inc. v. Chambers,* 551 So.2d 280 (Ala. 1989)).

It is apparent from the longstanding traditions, patterns and practices of incumbent city leadership that Bessemer voters have been disenfranchised and, in

the least, had their voting power diluted by elected officials. The actions undertaken by the Defendants have continued and will affect the upcoming election without intervention from this Court. The Defendants have utilized their position to violate not only the Plaintiffs' rights but the rights of each voter in the city of Bessemer. The Defendants have all acted under the color of state law by using their influence and position to remain in office to the disadvantage of the rights of voters to seek new leadership. Mere money damages will not remedy this injustice as the citizens of Bessemer seek and have the right to elect the candidates of their choice to public office. Money damages will not remove the officials from office, nor will such damages ensure an electoral process guaranteed by the Constitution of the United States.

Defendants' practices and patterns have not been limited to election day, but in preparation for the elections and afterwards. Defendants have employed the same practices and patterns, under the color of state law, in anticipation of the August 2018 municipal election. Plaintiffs urge this Court to enjoin Defendants from further action related to the administration of the upcoming municipal election and from being involved in any way on election day outside of legally casting their own vote.

Plaintiffs have suffered the injury of disenfranchisement, as well as, violations of their right of freedom of speech, and freedom of association. There is no easily quantifiable money damage award that would make Plaintiffs whole. An award of money damages would not reinstate the rights Plaintiffs lost to cast their ballots in confidence that their vote counts. Even citizens casting ballots absentee are not guaranteed the protection of their vote counting, or even being cast for the candidate they selected. Votes are also being diluted by citizens voting in person at the polling places in addition to casting absentee ballots. Votes are also being cast via proxy, however, the candidates selected by the actual voter differs from the vote actually cast by the proxy. Money damages will not resolve this issue.

The Plaintiffs must show a likelihood of success in prevailing in the underlying case on its merits. *See Ormco,* at 1109. However, this reasonable chance does not demand Plaintiffs to certainly prevail in order for a trial judge to grant the injunction. *Watts v. Victory,* 333 So.2d 560 (Ala. 1976) *(See also Coxe v. Huntsville Gas Light Co.,* 129 Ala. 496, 20 So.867 (Ala. 1901). Indeed, a trial judge has the discretion to find that Plaintiffs have "presented a fair question as to the existence of the right to be protected, and further finds that temporary interference to preserve the status quo is convenient and expedient, then he may exercise his discretion and grant the injunction." *Id.* Each citizen afforded the right to vote in the United States of America, has certain constitutional protections that

allow for those citizens to vote for their candidates of their choice. This right to vote comes free from undue influence, violations of election laws, and abridgement of First Amendment rights and freedoms. Without the intervention of this Court, these rights will most certainly be violated and lost.

Lastly, Plaintiffs must show that the burden on the Defendants to comply with the injunction does not unreasonably outweigh the benefit to the Plaintiffs. Plaintiffs only seek to have a fair electoral process, not have their votes diluted, not suffer disenfranchisement, or undue influence on the part of Defendants and their agents. Plaintiffs are not seeking to enjoin Defendants from campaigning, discussing issues with voters, serving the community, or even casting votes. Defendants need to be enjoined from patters and practices that violate voters' rights and also violate federal and state elections law.

## CONCLUSION

WHEREFORE, Plaintiffs have demonstrated entitlement to injunctive relief enjoining any and all involvement by Defendants in the administration of the upcoming August municipal election.

Respectfully submitted this 16th day of August, 2018.

THE RICE FIRM, LLC

/s/Richard A. Rice

---

RICHARD A. RICE (RIC086)
Attorney for the Plaintiffs

WELLS FARGO TOWER
NORTH 420 TWENTITH STREET
SUITE 2200
Birmingham, Alabama 35203
Telephone: 205.618.8733
Facsimile: 888.391.7193