FILED

2018 Aug-21  PM 12:11
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| Anthony Underwood | ) | CASE NO: |
| Melvin Nevett | ) | 2:18-cv-01310-MHH |
| Alzelda Richardson | ) | |
| Paul Garret | ) | |
| Anna L. Hill | ) | |
| Shirley Cotton, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| Kenneth E. Gulley, Mayor of Bessemer | ) | |
| The City of Bessemer Councilmembers: | ) | |
| David Vance | ) | |
| Chester Porter | ) | |
| Cynthia Donald | ) | |
| Donna Thigpen | ) | |
| Ron Marshall | ) | |
| Jesse Matthews | ) | |
| Cleophus King | ) | |
| Wanda Taylor, Bessemer City Clerk | ) | |
| Johnnie Mae Lassiter, Individual | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' ADDENDUM TO
## MOTION FOR PRELIMINARY INJUNCTION

COMES NOW the undersigned counsel on behalf of Plaintiffs, and respectfully moves for this honorable court for a preliminary injunction enjoining the defendants from any and all participation in the administration of the upcoming August 2018 City of Bessemer municipal elections. Grounds for this Motion are set forth fully in Plaintiffs' accompanying Memorandum of law.

Respectfully submitted,

s/Richard A. Rice

_____

Richard A. Rice

Attorney for Plaintiffs

## MEMORANDUM OF ADDENDUM IN SUPPORT OF PLAINTIFFS'

## MOTION FOR PRELIMINARY INJUNCTION

## STATEMENT OF FACTS

Plaintiffs' incorporate by reference all facts alleged in their Memorandum in Support of Motion for Preliminary Injunction, and further asserts that:

Plaintiffs filed a Motion for Preliminary Injunction with this Court on August 16th, 2018. Under direction of this Court, Plaintiffs amended their Memorandum in Support of Motion for Preliminary Injunction on August 21st, 2018. This Court allowed for Oral Arguments in support of this motion on August 20th, 2018. Under further direction of this Court, Plaintiffs provide this addendum to their arguments and assertions.

## SUMMARY OF ARGUMENT

It is apparent from the longstanding traditions, patterns and practices of incumbent city leadership that Bessemer voters have been disenfranchised and, in the least, had their voting power diluted by elected officials. The actions undertaken by the Defendants have continued and will affect the upcoming election without intervention from this Court. The Defendants have utilized their position to violate not only the Plaintiffs' rights but the rights of each voter in the city of Bessemer. The Defendants have all acted under the color of state law by using their influence and position to remain in office to the disadvantage of the

rights of voters to seek new leadership. Mere money damages will not remedy this injustice as the citizens of Bessemer seek and have the right to elect the candidates of their choice to public office. Money damages will not remove the officials from office, nor will such damages ensure an electoral process guaranteed by the Constitution of the United States.

Plaintiffs have suffered the injury of disenfranchisement, as well as, violations of their right of freedom of speech, and freedom of association. There is no easily quantifiable money damage award that would make Plaintiffs whole. An award of money damages would not reinstate the rights Plaintiffs lost to cast their ballots in confidence that their vote counts. Even citizens casting ballots absentee are not guaranteed the protection of their vote counting, or even being cast for the candidate they selected. Votes are also being diluted by citizens voting in person at the polling places in addition to casting absentee ballots. Votes are also being cast via proxy, however, the candidates selected by the actual voter differs from the vote actually cast by the proxy. Money damages alone will not resolve this issue. The United States Supreme Court has held that ongoing violations of First Amendment freedoms constitute "irreparable injury." *See Elrod v. Burns*, 427 U.S. 347, 373-74, 96 S. Ct. 2673, 2690 (1976).

## ARGUMENT

Plaintiffs incorrectly cited the Alabama Supreme Court's standard for issuing a preliminary injunction. For that section of Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction, the Plaintiffs amend as following:

ʻʻThe decision to grant or deny a preliminary injunction "is within the sound discretion of the district court." *Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002). In order for Plaintiffs' motion for preliminary injunction to succeed, Plaintiffs must show"

> (1) a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest.
> *Am. Civil Liberties Union of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.,* 557 F.3d 1177, 1198 (11th Cir. 2009) (quoting *Siegel v. LePore,* 234 F.3d 1163, 1176 (11th Cir. 2000)).

When a plaintiff "makes a very strong showing of irreparable harm and there is no substantial harm to the non-movant, then a correspondingly lower standard can be applied for likelihood of success." *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.,* 559 F.2d 841, 843 (D.C. Cir. 1977)); *Population Inst. v. McPherson*, 797 F.2d 1062, 1078 (D.C. Cir. 1986) ("Injunctive relief may be granted with either a high likelihood of success and some injury, or vice versa." (citation omitted)).

The United States Supreme Court, has held in favor of a preliminary injunction standard that "permits the entry of an injunction in cases where a factual dispute renders a fully reliable assessment of the merits impossible." *Citigroup Global Markets, Inc. v. VCG Spec. Opportunities Master Fund Ltd.,* 598 F.3d 30 (2d Cir. 2010.  For example, in *Ohio Oil Co. v. Conway*, the Court assessed that in dealing with a factual dispute, relating to the effect of a state tax on oil revenues, this issue had to "be resolved before the constitutional validity of [a] statute [could] be determined." 279 U.S. 813, 49 S. Ct. 256, 73 L. Ed. 972 (1929). The Court went on to instruct "[w]here the questions presented by an application for an interlocutory injunction are grave, and the injury to the moving party [in the absence of such an injunction] will be certain and irreparable . . . the injunction usually will be granted." *Id.*

> To justify a temporary injunction it is not necessary that the plaintiff's right to a final decision, after a trial, be absolutely certain, wholly without doubt; if the other elements are present (i.e., the balance of hardships tips decidedly toward plaintiff), it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation."))

*See Ashcroft v. ACLU,* 542 U.S. 656, 664-65, 124 S.Ct. 2783, 159 L.Ed.2d 690 (2004); *Hawaii Housing Authority v. Midkiff*, 463 U.S. 1323, 1326-27, 104 S.Ct. 7, 77 L.Ed.2d 1426 (1983) (Rehnquist, J., in chambers); R*oth v. Bank of Commonwealth*, 583 F.2d 527, 537 (6th Cir.1978) (quoting *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir.1953)

"Where success on the merits is "far from clear," a motion for preliminary injunction cannot fail as a matter of law if the prospective harm is sufficiently grave." See *Belbacha v. Bush*, 520 F.3d 452, 459 (finding risk of torture sufficiently grave to warrant preliminary injunction). The Plaintiffs have demonstrated a substantial likelihood of success in prevailing in the underlying case on its merits. Each citizen afforded the right to vote in the United States of America, has certain constitutional protections that allow for those citizens to vote for their candidates of their choice. This right to vote comes free from undue influence, violations of election laws, and abridgement of First Amendment rights and freedoms. Without the intervention of this Court, these rights will most certainly be violated and lost.

It is apparent from the longstanding traditions, patterns and practices of incumbent city leadership that Bessemer voters have been disenfranchised and, in the least, had their voting power diluted by elected officials. The actions undertaken by the Defendants have continued and will affect the upcoming election without intervention from this Court. The Defendants have utilized their position to violate not only the Plaintiffs' rights but the rights of each voter in the city of Bessemer. The Defendants have all acted under the color of state law by using their influence and position to remain in office to the disadvantage of the rights of voters to seek new leadership. Mere money damages will not remedy this

injustice as the citizens of Bessemer seek and have the right to elect the candidates of their choice to public office. Money damages will not remove the officials from office, nor will such damages ensure an electoral process guaranteed by the Constitution of the United States.

Defendants' practices and patterns have not been limited to election day, but in preparation of the elections and afterwards. Defendants have employed the same practices and patterns, under the color of state law, in anticipation of the August 2018 municipal election. Plaintiffs urge this Court to enjoin Defendants from further action related to the administration of the upcoming municipal election and from being involved in any way on election day outside of legally casting their own vote.

Plaintiffs have suffered the injury of disenfranchisement, as well as, violations of their right of freedom of speech, and freedom of association. There is no easily quantifiable money damage award that would make Plaintiffs whole. An award of money damages would not reinstate the rights Plaintiffs lost to cast their ballots in confidence that their vote counts. Even citizens casting ballots absentee are not guaranteed the protection of their vote counting, or even being cast for the candidate they selected. Votes are also being diluted by citizens voting in person at the polling places in addition to casting absentee ballots. Votes are also being cast

via proxy, however, the candidates selected by the actual voter differs from the vote actually cast by the proxy. Money damages alone will not resolve this issue. The United States Supreme Court has held that ongoing violations of First Amendment freedoms constitute "irreparable injury." *See Elrod v. Burns*, 427 U.S. 347, 373-74, 96 S. Ct. 2673, 2690 (1976).

Lastly, Plaintiffs have demonstrated that the burden on the Defendants to comply with the injunction does not unreasonably outweigh the benefit to the Plaintiffs. Plaintiffs only seek to have a fair electoral process, not have their votes diluted, not suffer disenfranchisement, or undue influence on the part of Defendants and their agents. Plaintiffs are not seeking to enjoin Defendants from campaigning, discussing issues with voters, serving the community, or even casting votes. Defendants need to be enjoined from patters and practices that violate voters' rights and also violate federal and state elections law.

## FEDERAL JURISDICTION OVER ELECTION CONTESTS

"Under our federal system, state courts and federal courts are presumed to have concurrent jurisdiction over cases arising under federal law. Congress, however, may confer upon federal courts exclusive jurisdiction by means of an exclusive statutory directive." *Singer v. City of Alabaster*, 821 So.2d 954, 958

(Ala. 2001) *See also Gulf Offshore Co. v. Mobil Oil Corp.,* 453 U.S. 473, 478 (1981).

Congress has asserted that only federal courts can entertain certain actions under certain sections of the Voting Rights Act. *See* 42 U.S.C. § 1973c. Accordingly, state courts have observed its constitutional duty to recognize the supremacy of federal law." *Mitchell v. City of Prichard,* 538 So.2d 1, 2 (Ala. 1988). This authority speaks specifically about § 5 of the voting rights act, however, state courts have broadly applied this context with regards to election contests and questions when determining if a state court enjoys subject matter jurisdiction over constitutional violations in voting rights. *Singer* at 958.

In *Singer,* the plaintiffs brought an action in Shelby County Circuit Court asserting an election contest, in which they claimed they were unconstitutionally denied the right to vote in the August 22, 2000, Ward 1 election. *Id.* The claim was dismissed for lack of subject matter jurisdiction by that court citing that § 5 of the Voting Rights Act was applicable and thus barred jurisdiction in state court. *Id.* On appeal, Plaintiffs argued that any relation of their claim with § 5 of the Voting Rights Act is merely incidental and, thus, did not prevent the Shelby Circuit Court from exercising jurisdiction. *Id.* The plaintiffs further asserted that their cause of action arises under state election laws rather than under § 5 of the Voting Rights Act. *Id.*

The court did not agree and thus upheld the ruling of the lower court, holding that "the actual source of the plaintiffs' right to bring an action, however, is not necessarily determinative of the question whether their lawsuit "arises under" § 5. It is true that "[o]rdinarily, '[a] suit arises under the law that creates the cause of action.'" *Id. See also Hudson Ins. Co. v. American Elec. Corp.,* 957 F.2d 826, 828 (11th Cir. 1992) (quoting *American Well Works Co. v. Layne & Bowler Co.,* 241 U.S. 257, 260 (1916)).

Claims brought "under the color of state law" all still considered to raise federal questions and confer subject-matter jurisdiction upon federal courts. *Singer* at 958. In such situations, the United States Supreme Court has held that "federal subject-matter jurisdiction exists where the plaintiff's right to relief "depends on resolution of a substantial question of federal law.'" *Franchise Tax Bd. of the State of California v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 28 (1983).

## INJUNCTIVE RELIEF AND/OR DELAY OF ELECTION WARRANTED

"The Supreme Court and the lower federal courts have not been averse to granting preliminary relief close to an election when plaintiffs have demonstrated an entitlement to such relief." *Council of Alternative Political Parties v. Hooks*, 121 F. 3d 876, 883 (3rd Cir. 1997). "[T]he public interest also favors granting plaintiffs preliminary relief." *Id.*at 884. Without legitimate, competing interest, American

jurisprudence in protecting the public interest "clearly favors the protection of constitutional rights, including the voting and associational rights of alternative political parties, their candidates, and their potential supporters." *Id.* In the instant case, there is no basis for that preliminary relief will negatively impact the August 2018 election. *Id.* As such, these constitutional rights of the Plaintiffs and the public interests of voters as a whole, should be protected immediately with either a delay in the upcoming election or injunctive relief.

Additionally, this court has requested cases illustrating any precedent of delaying an election by manner of preliminary injunction. However, the Plaintiff requests that the court take notice that delaying the election is not the only form that the injunction may take. This court has the power to issue an order fashioning additional oversight on the election process. There is ample case law supporting this type of court intervention, even within a limited window. *Norman v. Reed,* 502 U.S. 279, 287, 112 S.Ct. 698, 704, 116 L.Ed.2d 711 (1992) (Supreme Court preliminarily reversed state supreme court's denial of desired ballot space, and granted stay pending review, less than two weeks before election); *Illinois State Bd. of Elections v. Socialist Workers Party,* 440 U.S. 173, 177, 179, 99 S.Ct. 983, 986, 987, 59 L.Ed.2d 230 (1979) (affirming lower court and noting that on March 14, 1977 district court enjoined enforcement of unconstitutionally high signature requirements for June 7, 1977 special election); *Bullock v. Carter,* 405

U.S. 134, 136, 92 S.Ct. 849, 852, 31 L.Ed.2d 92 (1972) (noting that district court decided on April 3, 1970 that petitioners must be permitted to participate in party primary on May 2, 1970, even though they had not paid filing fee that court found to be unconstitutional); *Rockefeller,* 78 F.3d at 44 (affirming preliminary injunction — easing New York presidential primary petition requirements and requiring addition of candidates' names to ballots — entered by district court on February 21, 1996, less than three weeks before March 7, 1996 primary); *Republican Party of North Carolina v. Hunt,* 841 F.Supp. 722 (E.D.N.C.), *aff'd and modified,* 27 F.3d 563 (4th Cir.1994) (table) (granting preliminary injunction in January, extending February filing deadline for judicial candidates for November ballot). In addition to the foregoing examples and citations, there are additional representative cases cited at the Federal Judicial Center[1] and documented on the organization's public website URL - https://www.fjc.gov/content/overview-6.

---

[1] The Federal Judicial Center is the research and education agency of the judicial branch of the United States Government. The Center supports the efficient, effective administration of justice and judicial independence. Its status as a separate agency within the judicial branch, its specific missions, and its specialized expertise enable it to pursue and encourage critical and careful examination of ways to improve judicial administration. The Center has no policy-making or enforcement authority; its role is to provide accurate, objective information and education and to encourage thorough and candid analysis of policies, practices, and procedures.

By statute, the Chief Justice of the United States chairs the Center's Board, which also includes the director of the Administrative Office of the U.S. Courts and seven judges elected by the Judicial Conference. The Board appoints the Center's director and deputy director; the director appoints the Center's staff. Since its founding in 1967, the Center has had ten directors. Judge Jeremy D. Fogel became director in 2011. He was appointed U.S. district judge for the Northern District of California in 1998, but has been resident in Washington, D.C., since becoming director.

## CONCLUSION

WHEREFORE, Plaintiffs have demonstrated entitlement to injunctive relief enjoining any and all involvement by Defendants in the administration of the upcoming August municipal election.

"All the rights of the world depend on our voting rights. If we lose those, we have nothing," and the plaintiffs and the citizens of Bessemer have essentially lost those rights and will continue to suffer without the intervention of this Court.

Respectfully submitted this 21st day of August, 2018.

THE RICE FIRM, LLC

/s/Richard A. Rice

_____
RICHARD A. RICE (RIC086)
Attorney for the Plaintiffs

WELLS FARGO TOWER
NORTH 420 TWENTITH STREET
SUITE 2200
Birmingham, Alabama 35203

Telephone: 205.618.8733
Facsimile: 888.391.7193

## CERTIFICATE OF SERVICE

I, **RICHARD A. RICE,** attorney for the plaintiff in this action, do hereby certify that on this date I caused the foregoing Plaintiff's Proposed Witness List to be electronically served upon the following:

R Shan Paden
SPaden@padenlawyers.com

Alfred H. Perkins
aperkins@starneslaw.com

/s/Richard A. Rice

_____

RICHARD A. RICE
Attorney for the Plaintiffs

15