IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ANTHONY UNDERWOOD, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) Case No.: 2:18-CV-01310-MHH |
| KENNETH E. GULLEY, MAYOR | ) |
| OF BESSEMER, et al., | ) |
| | ) |
| Defendants. | ) |

### DEFENDANTS' BRIEF IN OPPOSITION
### TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

COME NOW Defendants Kenneth E. Gulley, Mayor of Bessemer; City of Bessemer Councilmembers: David Vance, Chester Porter, Cynthia Donald, Donna Thigpen, Ron Marshall, Jesse Matthews, and Cleophus King; and Wanda Taylor, Bessemer City Clerk and submit this memorandum brief in opposition to Plaintiffs' Motion for Preliminary Injunction. Defendants urge this Court to deny Plaintiffs' motion in that Plaintiffs have failed to satisfy the prerequisites for obtaining such extraordinary relief.

### INTRODUCTION

The Complaint in this matter makes numerous unsupported allegations regarding the conduct of municipal elections in Bessemer. However, when given an opportunity to provide this Court with evidence to support the allegations in the

{B2936503}

Complaint, Plaintiffs could not meet their burden of providing sufficient evidence to allow this Court to grant their motion.

## PRELIMINARY INJUNCTION STANDARD

The preliminary injunction is an "extraordinary and drastic remedy" not grantable unless the movant "clearly carries the burden of persuasion" as to the following four prerequisites: (1) a substantial likelihood of success on the merits; (2) that he will suffer irreparable injury unless the injunction issues; (3) that the threatened injury to the movant outweighs the threatened harm the proposed injunction may cause to the opposing party; and (4) that the injunction, if issued, will not disserve the public interest. *Bryan v. Hall Chemical Company*, 993 F.2d 831, 835 (11th Cir. 1993). As shown below, Plaintiffs' fail on each of these requirements.

### I. PLAINTIFFS DID NOT SHOW THAT THEY HAVE A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

The Complaint asserts two claims, both under 42 U.S.C. § 1983: (1) Violation of the Voting Rights Clause of the First Amendment and (2) violation of the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment. Plaintiffs were unable to show that there is a substantial likelihood of success on either claim.

#### A. The Voting Rights Clause of the First Amendment

The Eleventh Circuit recently addressed the impact of the First Amendment on voting rights, again confirming that the First Amendment provides no greater

protection for voting rights than the protection provided by the Fourteenth Amendment:

> It is well established in this Circuit that the First Amendment provides no greater protection for voting rights than is otherwise found in the Fourteenth Amendment. In *Burton v. City of Belle Glade*, 178 F.3d 1175 (11th Cir. 1999), the plaintiffs alleged that the City of Belle Glade's failure to annex their housing project deprived them of the right to vote in violation of the First and Fourteenth Amendments. *Id.* at 1183. After rejecting the plaintiffs' Fourteenth Amendment claim, the Court disposed of plaintiffs' First Amendment contention, holding that "since the First and Thirteenth Amendments afford no greater protection for voting rights claims than that already provided by the Fourteenth and Fifteenth Amendments, we conclude that the district court did not err in dismissing these claims." *Id.* at 1188 n.9 (citations omitted). Additionally, in *Cook v. Randolph County*, 573 F.3d 1143 (11th Cir. 2009), Cook contended that the County Board of Registrars' attempt to change his voting registration infringed his right to vote under the First and Fourteenth Amendments. *Id.* at 1148. There, a panel of this Court dismissed Cook's First Amendment claim, holding still again that "[t]he First and Thirteenth Amendments afford no greater protection for voting rights claims than that already provided by the Fourteenth and Fifteenth Amendments." *Id.* at 1152 n.4 (quoting *Burton*, 178 F.3d at 1188 n.9); *see also Irby v. Virginia State Bd. of Elections*, 889 F.2d 1352, 1359 (4th Cir. 1989) ("Having found no violations of the Equal Protection Clause and the Fifteenth Amendment, we likewise conclude that plaintiffs' First and Thirteenth Amendment claims must fail. In voting rights cases, the protections of the First and Thirteenth Amendments do not in any event extend beyond those more directly, and perhaps only, provided by the fourteenth and fifteenth amendments.") (internal quotation marks omitted) ).

*Hand v. Scott*, 888 F.3d 1206, 1211 (11th Cir. 2018).

Therefore, if the Plaintiffs are not substantially likely to prevail on their equal protection challenge they are also substantially unlikely to prevail on their First Amendment challenge.

**B.     The Equal Protection Challenge**

The problem for the Plaintiffs in this case is that they have not shown (nor have they even claimed) that Bessemer's municipal election system has as its purpose the intent to discriminate on account of race or some other insular classification; or that it had the effect of a discriminate impact on an insular minority.[1] "The first inquiry in any § 1983 suit . . . is whether the plaintiff has been deprived of a right '*secured by the Constitution and laws*.'" *Curry v. Baker*, 802 F.2d 1302, 1314 (11th Cir. 1986) (*citing Baker v. McCollan*, 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed. 2d 433 (1979) (emphasis in original). In *Curry*, the plaintiffs pointed to a fundamental right to vote grounded in the Due Process clause of the Constitution. The 11th Circuit held "the functional structure embodied in the Constitution, the nature of the federal court system, and the limitations inherent in the concepts both of limited federal jurisdiction and of the remedy afforded by § 1983" operate to restrict federal relief in the state election context. *Citing Gamza v.*

---

[1] To establish a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must show that the city's decision or act had a discriminatory purpose and effect. See *Reno v. Bossier Parrish School Board*, 520 U.S. 471, 481, 117 S.Ct. 1491, 137 L.Ed. 2d 730 (1997).

{B2936503}                                            4

*Aguirre*, 619 F.2d 449, 452 (5th Cir.), *reh'g denied*, 625 F.2d 1016 (1980). "Although federal courts closely scrutinize state laws whose very design infringes on the rights of voters, federal courts will not intervene to examine the validity of individual ballots or **supervise the administrative details of a local election**." *Curry*, 802 F.2d at 1314, citing *Griffin v. Burns*, 570 F.2d 1065, 1078 (1st Cir. 1978). Only in extraordinary circumstances will a challenge to a state election rise to the level of a constitutional deprivation. *Id.*

In *Gamza*, plaintiff alleged that election officials had negligently and unlawfully performed the vote count, thereby costing him the election. The Fifth Circuit found that plaintiff failed to state a constitutional deprivation under § 1983, holding:

> In the absence of evidence that the alleged maladministration of the local election procedures was attended by the intention to discriminate against the affected voters or motivated by a desire to subvert the right of the voters to choose their . . . representative, we cannot conclude that the error constituted a denial of equal protection of the laws.

*Gamza*, 619 F.2d at 454.

The *Curry* court also noted that in *Johnson v. Hood*, 430 F.2d 610 (5th Cir. 1970), the plaintiffs alleged that the County Election Commission's decision to reject 10 ballots as improper was arbitrary, capricious and without any reasonable basis. However, the Fifth Circuit rejected this argument and ruled that even if the alleged facts were true, they failed to support a valid constitutional violation.

Here, Plaintiffs made no allegation and presented no evidence that the statutes governing municipal elections Alabama or the way in which the Defendants administered the election procedures was attended by the intention to discriminate against the Plaintiffs. In fact, Plaintiffs presented not one single citizen of Bessemer who testified that they were unable to vote in a past municipal election due to the conduct of the Defendants. Thus, Plaintiffs' evidentiary failure at the hearing on their Motion for Preliminary Injunction, does not satisfy the requirement that Plaintiffs have a substantial likelihood of success on the merits as to their Fourth Amendment claim.

Additionally, insofar as damages are sought from the Defendants, who are all individuals, those Defendants are entitled to qualified immunity;[2] there being no evidence that the Defendants deprived Plaintiffs of a constitutional right.[3]

Plaintiffs provided no evidence that Mayor Gulley did anything to preclude a citizen of Bessemer from casting a vote in the 2014 election. Even considering the allegation that Mayor Gulley entered a polling place and spoke to election officials, that does not amount to a constitutional violation, as it is a state statute that is at issue. Likewise, there has been no evidence presented by Plaintiffs that the City Council defendants who appointed election officials have violated a constitutional right, as the process of appointing election officials is also created and governed by

---

[2] Qualified immunity protects government officials from liability for civil damages unless they violate a statutory or constitutional right that was clearly established at the time the alleged violation took place. *See Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009); *Amnesty Int'l, USA v. Battle*, 559 F.3d 1170, 1184 (11th Cir. 2009). "The purpose of [qualified] immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit 'all but the plainly incompetent or one who is knowingly violating the federal law.'" *Lee*, 284 F. 3d at 1194 (citation omitted). Qualified immunity is a defense not only from liability, but also from suit, so courts should ascertain the viability of a qualified immunity defense as early in the lawsuit as possible. *See id*.

"Under the well-defined qualified immunity framework, 'a public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *Terrell v. Smith*, 668 F.3d 1244, 1250 (11th Cir. 2012) (quoting *Lee*, 284 F.3d at 1194). Once the official has done so, the burden shifts to the plaintiff to demonstrate that he has (1) alleged adequate facts to show violation of a constitutional right, and (2) invoked a right that was clearly established at the time of the defendant's alleged misconduct. *Pearson*, 555 U.S. at 232, 129 S. Ct. 808.

[3] *See Cook v. Randolph County, Georgia*, 573 F.2d 1143, 1148 (11th Cir. 2009).

{B2936503}  7

state law.[4] The same is true with the process of counting absentee ballots. Defendants also note that there is no evidence that any absentee ballot was improperly counted or improperly excluded.

### C. The Voting Rights Act Argument in Plaintiffs' Supplemental Brief does not Suffice to Justify a Preliminary Injunction.

In their supplemental brief filed the morning of the hearing on the Motion for Preliminary Injunction, the Plaintiffs argue that their voting rights were abridged in the past. [Doc. 8, p. 10.] The fatal problem with Plaintiffs' argument regarding § 2 of the Voting Rights Act is that Plaintiffs have not shown any violation of the voting guarantees of the 14th or 15th Amendment. Plaintiffs have made no allegations, and certainly presented no evidence, that the 15th Amendment has been violated by the Defendants. As discussed *infra*, Plaintiffs have shown no violation of the 14th Amendment. Additionally, Plaintiffs have not shown that any person or class of persons in the City of Bessemer has been deprived of the right to vote.

As previously stated, a claim of denial of equal protection necessarily rests on a plausible allegation of differential treatment of members of a protected class due to discriminatory intent. *United States v. Armstrong*, 517 U.S. 456, 465, 116 S.Ct. 1480, 134 L.Ed. 2d 687 (1996). Neither the Complaint nor the commentary regarding the Voting Rights Act alleges a plausible Fourteenth Amendment claim.

---

[4] See Supplemental Evidentiary Submission.

The fatal problem with Plaintiffs' motion is that it rests upon allegations that are unsupported by the evidence proffered at the hearing. For example, in its supplementary brief, Plaintiffs state "defendants have willfully and knowingly violated [Section 11(b) of the Voting Rights Act] by using their respective positions of authority, under the color of law, to disenfranchise certain voters and manipulate the votes of other citizens. Defendants' have repeatedly engaged in patterns or practices that cause certain voters' freedom of choice to be abridged by the various voter moguls and proxy voters." [Doc. 8, p. 12.] When given the opportunity at a hearing, Plaintiffs presented no evidence to substantiate any likelihood that they could prove these allegations.

## II. PLAINTIFFS FAILED TO ESTABLISH THAT IRREPARABLE INJURY WILL BE SUFFERED UNLESS THE INJUNCTION ISSUES

As Plaintiffs correctly argue in their brief, the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000). *Siegel* goes further and states "as we have emphasized on many occasions, the asserted irreparable injury 'must be neither remote nor speculative, but actual and imminent.'" *Siegel*, 234 F.3d at 1176 (citations omitted.)

None of the Plaintiffs explained how any of them would be irreparably injured if this Court denied the preliminary injunction. In fact, none of these Plaintiffs even alleged that any of them have been unable to cast their votes in any past municipal

election, and certainly have not alleged sufficient basis to think that any of these Plaintiffs will be unable to cast their votes in the upcoming municipal election, which is the subject of their request for injunction. As with all other elements this Court is to consider when deciding whether to grant preliminary injunctive relief, Plaintiffs bear the burden of persuading this Court of the existence of this requirement. Plaintiffs have not met this burden and cannot meet this burden because Plaintiffs have remedies under state law to address and correct deficiencies in a municipal election. Mr. Underwood himself testified that after the 2014 municipal election, he availed himself of two different methods of challenging the results of the municipal election. Thus, in addition to failing to show how any Plaintiff would actually be harmed or an imminent threat of harm, Plaintiffs have state law ways of remedying any actual harm that occurs.

### III. PLAINTIFFS HAVE NOT SHOWN THAT THE THREATENED INJURY TO THEM OUTWEIGHS THE DAMAGE THE PROPOSED INJUNCTION MAY CAUSE

Plaintiffs claim that they do not seek to delay the election, but simply to remove the Defendants' involvement in the election. As counsel for the Defendants, Mr. Paden, explained to the Court, there are logistical issues that preclude Plaintiffs' conception of injunctive relief. Plaintiffs have presented no specifics of their preferred injunctive remedy or any proof whatsoever that this preferred remedy can be put in place in time for the August 28, 2018 election.

Plaintiffs have not shown that any of them individually will suffer at all from the upcoming municipal elections. Presumably, the threatened injury to the Plaintiffs is that their votes will not be counted. That speculative injury does not outweigh the damage caused by delaying the election.

IV. **PLAINTIFFS HAVE FAILED TO SHOW THAT THE INJUNCTION THEY SEEK, IF ISSUED, WOULD NOT BE ADVERSE TO THE PUBLIC INTEREST**

The public has an interest in the orderly process of elections, and should not have that process held hostage by the opinions of these Plaintiffs who have failed to present sufficient evidence to substantiate any likelihood of success in this action.

## CONCLUSION

In this circuit, a preliminary injunction is an extraordinary and drastic remedy which courts have held should not be granted unless the movant clearly established the burden of persuasion as to each of the four elements. *Siegel*, 234 at 1176. For this reason, this Court should deny Plaintiffs' motion.

/s/ Alfred H. Perkins, Jr.
Alfred H. Perkins, Jr. (PER063)
STARNES DAVIS FLORIE LLP
100 Brookwood Place, Seventh Floor
Birmingham, AL  35209
(205) 868-6000 – Phone
(205) 868-6099 – Fax
*aperkins@starneslaw.com*
Attorney Defendants Kenneth E. Gulley, Mayor of Bessemer; City of Bessemer Councilmembers: David Vance, Chester Porter, Cynthia Donald, Donna Thigpen, Ron Marshall, Jesse Matthews, and Cleophus King; and Wanda Taylor, Bessemer City Clerk

## CERTIFICATE OF SERVICE

I hereby certify that on August 20, 2018, I electronically filed the foregoing with the Clerk of the Court using the AlaFile system, which will send electronic notification of such filing to the following:

Richard A. Rice, Esq.
THE RICE FIRM, LLC
Wells Fargo Tower
420 20th Street North, Suite 220
Birmingham, AL  35203
(205) 618-8733 – Phone
(888) 391-7193 – Fax
rrice@rice-lawfirm.com

/s/ Alfred H. Perkins, Jr.
Alfred H. Perkins, Jr. (PER063)
STARNES DAVIS FLORIE LLP
100 Brookwood Place, Seventh Floor
Birmingham, AL  35209
(205) 868-6000 – Phone
(205) 868-6099 – Fax
*aperkins@starneslaw.com*
Attorney for Defendants Kenneth E. Gulley, Mayor of Bessemer; City of Bessemer Councilmembers: David Vance, Chester Porter, Cynthia Donald, Donna Thigpen, Ron Marshall, Jesse Matthews, and Cleophus King; and Wanda Taylor, Bessemer City Clerk